Ruffin, C. J.
The decision of this Court in the case of Trice v. Turrentine, 5 Ire. 236, and in that of Waugh v. Hampton, at the same term, was the authority which governed the presiding Judge in this case, and the present appeal was designed to bring that, decision under review. It was given with hesitation by a divided Court. After taking time for deliberation and maturely reflecting on the reasons given in those cases, the Court, believing the opinion to be erroneous, is constrained, though reluctantly. to hold it so. *581 The opinion delivered laid down a position entirely new to the Profession, and in opposition toa course which had been alwa3rs practised in this State. There had been many judgments against bail of one defendant on non est inventus returned as to him, because he could not be found, and returned, as of course, in respect to the others, by the direction of the plaintiff not to take or to look for them ; and there can be little doubt but that the same would have been done in those cases and in the present, if the sheriffs had not happened to be the bail. It is manifest upon the face of the opinion, as delivered by our late learned Brother Daníel, that the judgment rests upon this position: That when a judgment is taken against two or more, as between all of them and the bail of one, they are all principal debtors, and the bail stands as surety for all the defendants. He does not, indeed, lay down the proposition quite so explicitly as that — as he would, doubtless, have done, if he had seen his way as clearly as he usually did. But that is the necessary effect of what he does say. His words are: “that the legislature considered all the defendants as principal debtors, and the bail of all or any of the defendants as quasi sureties only ; and before these sureties [bail] should be looked to by the plaintiff for the debt, he should show by a ca. sa. returned non est inventus as to all the principals, that he had been unable to get his debt” — that is, from either of them. That position is, we think, essentially wrong; and, as it lies at the loundation of the opinion, the whole must fall together. The error consists in regarding the bail of one defendant as the surety of another, or that any person is the principal of the bail except him, for whom he became bound by the bail bond. The sheriff, indeed, does not give a bond, but becomes bound by law as special bail, if he fail to return a sufficient bond given by other bail. But it is admitted in the opinion, that can make no difference, and that he is to be regarded *582 ns if he had given a separate bond as the bail of Forkner ; for, bail is always taken for each defendant separately, and the sheriff cannot prejudice the plaintiff by becoming bail under the statute instead of taking a bond from other sureties. Now, if several bonds be given hy different bail for the different defendants respectively, we must deny positively, that the bail in one of those bonds can be deemed the bail of another defendant, or his surety, or ,quasi surety, to any purpose whatever. The term “quasi,’' as here used, has no meaning or legal effect, but is calculated only to mislead. One must, be surety for another» or not; for there is no middle state or relation Then.it seems clear, that the bail and surety for one is not the surety for the other, more than he is his bail. He becomes bound'solely by becoming bail, and he is bound as surety as far as he is bound as bail and no further. It follows, that his right, of indemnity goes to the same extent, and no further. Judge Daniel must have felt that to be so ; and that induced him to use the qualifying phrase, “quasi sureties,” which, however, served not to help on his argument, but only to perplex the question the more. When one man is surety for another, he has a right to be made whole by the principal for any loss sustained thereby, and to contribution from any other bound as surety for the same debt. That is inherent in the relations of principal, surety, and co-surety, and every Court recognises it, which takes cognizance of questions between persons in those relations. Yet it is distinctly admitted in the opinion, that there is no such right to indemnity or contribution from one defendant or his bail to the bail of another. Indeed, it was expressly held so, in Osborne v. Cuningham 4 Dev. & Bat. 423 ; and in Ferrall v. Brickell 5 Ire. 67. Judge Nash, in delivering the opinion of the Court, said, that “the sheriff, as bail,” — that is, for Lowe, who was not taken — “was 4not in any manner concerned, in the effort to be made by *583 Hawkins” — who was the other debtor — “to procure his discharge under the insolvent law.” That must be seen to be so, wrhen one reflects, that there is no mode by which a person can become surety for another but by contract; and that the contract of bail is in a prescribed form, which in terms is restricted to his one principal. That consideration by itself ought, it would seem, to be conclusive on the point. But its force was avoided by the observation, that, although the bail oí one defendant is not entitled to indemnity or contribution from another, yet he has an interest, that all the defendants shall be brought in, because, peradventure, one of them, for whom, the bail is not bound, might show that the debt has been paid, or might then be induced to pay it, and so the bail-might get off without either paying any money or rendering his principal. True, he might. But the question recurs, ought he to get rid of his engagement in that way ? Has he a right so to do ? Now, it is obvious, that one of the original defendants has precisely the same interest, that the creditor should bring in his co-defendants, which, w'hen existing in the bail of one, is supposed to create the obligation on the creditor to take all the debtors, if he can. For, one defendant may, with as much truth, say to the creditor, your judgment is against two, and therefore each ought to pay his half, and you ought not to imprison me for the whole debt, because, if you would take the other man also, he might show that he has paid his half, or might be induced by the imprisonment to pay it now. As far as the interest of one defendant and the bail of that defendant goes or can,operate upon the question, it is the same in each. But has either of them the right to demand of the creditor thus to imprison all the debtors? Plainly not, in the one case more than in the other ; for the right depends upon the interest of the several parties, and that has been shown to be the same in each, But, without pressing that point farther, there are *584 other observations to be made upon the proposition. The first is, that it is a total departure from the principle, on •which the opinion sets out, as the foundation of this right ■in the bail, namely, that of suretyship. This view leaves that notion out of sight, and, consequently, the idea of indemnity is abandoned. A proposition, distinct from the ■other and entirely new, is brought forward: that, by vir-tue of the requirement in the statute of a ca. sa. returned non est inventus before the sci.fa. against bail, there is an obligation on the creditor to take all the original defendants, if he can, before he can have recourse to the bail of one, who had fled the country. Now, that seems to be •a complete begging of the question. Whence arises that obligation — how is it to be inferred ? The statute, indeed, requires the ca. sa., and it must be as broad as the judgment, and therefore run against all the defendants. .Still, as the bail is bound but for one, where is his right to require the creditor to take any body but the one, for whom he is bound ? If his principal be taken, the bail is .instantly discharged. By what? Not by his principal’s ■paying the debt, but by the taking merely. For, that .was the contract of the bail — that he would render his principal, if he did not render himself. But the rendering ■or taking of another defendant leaves the obligation of the bail precisely as it was before. He is still bound to render his principal or pay the money ; and the creditor, while having one defendant in jail, may levy the money ■from the bail of another. Suppose'he should ; how, then, do those parties stand to each other ? Why the imprisoned defendant is immediately discharged, because the debt ■is paid ; and yet the bail, whose money paid this man’s debt and turned him out of prison, and who is said to Stand as quasi surety for him, cannot get one copper- from • him, who is thus discharged from debt and imprisonment. For, that was the adjudication in the two cases before cited 5 and in each it was clearly right, as we think, in *585 asmuch as the contract of the bail is for and with his own principal and him only. The case of Osborne v. Cunningham is particularly strong, because the defendant, as we collect from the statement, may have been not only a joint debtor in form, but in fact. But, if it were otherwise, and he was the surety of Patton, it is much the-same ; for, in that case, the original surety and the bail for the principal debtor would have stood in the relation of co sureties ; and to meet that view the defendant offered to show, that he had paid one half of the debt before, the suit, but the Court would not hear the evidence, be.cause there was no privity between them and therefore the bail could not recover under any circumstances. But there is another observation, which seems very material. If the bail of one has such an interest in the creditor’s pursuing all the defendants as to amount to a right in the bail to require him to do so — because, as it is said, it may be, that he would not have bound himself for that one, if' the others had not been parties — then, plainly, the creditor ought to be bound- to prosecute all the original defendants to judgment. For, there is no substantial difference, as far as the bail’s liability and interest is involved, bet-tween letting off the solvent defendant before judgment, and declining to imprison him afterwards. Yet it was held in Bradhurst v. Pearson, 10 Ire. 55, that the sheriff was the bail of each separately, and that the plaintiff’s entering a nonpros, as to one defendant did not discharge the bail of the other. Those cases show, that the law. cannot look out of the contract of bail for his liability, or undertake in proceedings against bail to redress collateral inconveniences on the one side or the other. Some of these inconveniences to the bail are adduced in the opinion under consideration, as reasons for the extraordinary privilege there extended to him. It is said, for example, that a solvent defendant may be here, and yet the bail of the other made liable, although his principal may have *586 become insolvent and fled — -which is adduced as a hardship. Rut, necessarily, it is none at all; nor generally would it be one. In the first place, it is to be replied to the bail, that he bound himself to render his principal, and the very case, which his obligation was intended to cover, has happened, namely, the flight of his principal beyond the process of the Court. In the next place, he is not bound to pay the debt, if he will render his principal; and to that purpose his solvency or insolvency is not material ; and, indeed, he cannot know that his principal would not be able to procure the means of payment, if surrendered. In the third place, he cannot know that his principal is not the primary debtor, and the very man who ought to stand not only before him but before the other defendants in the judgment — he being the principal debtor and the others his sureties. Suppose this last to be the case ; then the creditor, so far from pressing payment out of the original surety by ca. sa., it seems, is under an equitable obligation of benevolence to him to get payment from the bail of the principal rather than from the surety. For, in Parsons v. Briddock, 2 Vern. 608, it was decreed, where the principal was sued and gave bail, and afterwards an original surety paid the debtt that such surety was entitled to an assignment of the judgment the creditor had taken against the bail, and to ■use it to indemnify himself out of the bail. How far that might be sustained now, it is not necessary to say. It shows, at all events, that the surety and the bail are not Co-sureties, as this Court held in Osborne v. Cunningham, and that the bail can have no recourse on an original surety, whether it be true vice versa, or not. Let another case, which is not uncommon, be stated : Principal debtor and surety are sued jointly, and the former, in order to get out of the sheriff’s hands, deposits with him an indemnity. Yet it is said, that the bail, with the principal’s money in his- pocket to pay that very, debt, may insist upon the *587 creditor’s putting the surety in jail, in order to extort payment from him. That would be a hardship, indeed ; but it would be on the other side. Again: Suppose, as appeared to be the fact in the case of Trice v. Turrentine, that some of the defendants were insolvent, while the defendant for whom the bail undertook might be able to pay the debt. Wherefore compel the creditor to put an honest insolvent in prison, be at the expense of maintaining him there, and, on his swearing out, pay the sheriff poundage on the debt, which he could never get back? The law, we are very sure, could have no such intention. The object was to require the creditor to seek the debtor, whose bail he purposed to charge. It is like the common case of an execution against two, upon which, though the law requires the personalty to be all sold before land, the constant course has been, as well with levies of a justice's executions as with sales by sheriffs, to proceed against the land of one defendant, when his chattels were exhausted, although the other defendant might have a sufficiency of chattels, to satisfy the debt. Indeed, we have a statute, which requires that, when it appears upon the process, that one defendant is principal and the other surety. So, if there be a joint judgment against two, and one of them be honestly insolvent, so that the creditor cannot make the requisite affidavit to entitle him to a ca. sa. against him under the act of 1814, yet the other is fully able to pay the debt but his property is not tangible, or he is about to leave the State. Could any Court, upon affidavit of those facts and an undertaking by the creditor not to serve it on the insolvent, hesitate to issue a ca. sa. in conformity to the judgment against both? To refuse it would be to defeat justice and stifle the great purposes of the law under its forms. It is a very common thing for an execution to issue for one sum, with an indorsement to raise a less. The execution issues in one form for conformity to the judgment, but *588 either a direction of the Clerk or the order of the plaintiff written on the process is an authority, how far short of its face the officer may go in executing it; and this may as well apply to persons as to things mentioned in it. Thus a capias ad respondendum issues against a man and woman, whereby the sheriff is commanded in terms to take their bodies, yet he in fact arrests but the man, and! as to the woman the writ operates but as a summons. Would the sheriff be bound to arrest the woman, because the writ was in that form? Or, if not, would he be at liberty not to arrest the man because he could not arrest the woman also ? Certainly the answer is in the negative in each case. The plaintiff could require the sheriff to arrest his male debtor, and direct him authoritatively, not to arrest or imprison the woman ; for the law, in exempting a female from imprisonment, did not alter the form of the process against her, but only changed its use-as to a female. Indeed, if there be a capias ad respondendum against two men, can any body doubt, that the plaintiff may, notwithstanding its terms, order the sheriff not to hold one of them to bail ? It has been done thousands of times, and is every day’s practice. That is nothing more nor less than an order not to arrest or take the body, but to summon ; and to that extent it is, not changing-the form, but the effect of the w'rit. So, in order to. charge bail, the course was to issue a ca. sa. according to the judgment, and, at the direction of the plaintiff, not to serve it on particular defendants but to return it non est inventus as to those, whose bail it was the object to fix. If that were not so, creditors would, always bring separate actions ; and, if the law requires the creditor to imprison insolvent defendants or sureties, before proceeding against the bail of a solvent defendant or of the principal debtor, no Court ought to order him to. consolidate. Besides, it would be so easy in other ways to evade the consequences of the rule, as to make it of *589 little value to the bail. For, the creditor would have nothing to do but to issue his ca. sa, a few days before the return, and give notice of it to a defendant, whom he did not wish to arrest, so as to enable him to be out of the sheriff’s County for a short time, until non est inventus should be returned. That done, the sheriff would be fixed, and could never afterwards either take that defendant upon his own authority, or require the creditor to take out another ca. sa.; and thus this supposed privilege of the bail of one, to have process against all the defendants, would be rendered of no value. True it is, if one defendant be arrested and discharged by the creditor, that discharges the bail of another defendant. But why? Not because there is any connection between them, but because the other defendant, the bail’s principal, is discharged. Taking the body is satisfaction of the debt prima facie; and it is absolutely, if the creditor release the debtor from arrest. Bryan v. Simonton, 1 Hawks. 51. It is the same as payment; and, of course, the bail of all the defendants and all the defendants themselves, are discharged, there being no longer a debt, for which they can be liable. But, while the debt remains, the bail of one defendant has no right to require that another defendant, as such, shall stand before him, any more than he can have a recovery against him for any sum he may pay as the bail of the former. For, the contract of bail is restricted to his principal. If the creditor arrest him, that exonerates the bail at once; and nothing else can, except the payment of the debt, or its satisfaction, as just men» tioned. The law cannot undertake to settle, upon arbitrary rules, collateral equities that may exist between the parties, nor to judge of hardships that may arise to the one side or the other; but must satisfy itself with administering justice to each party according to the undertakings in their contracts. For these reasons the Court holds, that there was a sufficient ca. m* and return te *590 charge the defendant as bail of Forkner ; and therefore that the plaintiff was entitled to judgment on the verdict, and that it must be now rendered.
It has never occurred to me, that there can be several executions on a joint judgment, or one execution on two judgments, except as specially provided for in the case ■of principal and bail by the act of 1777, C. 115. S. 19. I do not look back to the cases upon the subject, because I know it to be too thoroughly settled to be shaken, that the execution must conform to the judgment; and therefore I concur in thinking on that point with my brother Nash, that the precedents from time immemorial cannot be safely departed from. I own, indeed, that I think the precedents right in themselves, and that it would lead to great mischiefs to disregard them. The record ought to be kept consistent upon its face, which can be done only by requiring in the execution a conformity to the judgment ; and I have never heard a suggestion from any quarter that they need not coincide. Of course, my rule, as the safe one is, stare super antiquas vias ; for I then know where I am. But if I get into new tracks, I cannot tell where they may lead me ; and hence I deem it a duty to avoid them.